BANK OF PEA RIDGE *v*. CAMPBELL.

5-1620                    316 S. W. 2d 713

Opinion delivered October 13, 1958.

*Jeff Duty* and *Claude Duty*, for appellant.

*Vol T. Lindsey*, for appellee.

PAUL WARD, Associate Justice. The trial court made two findings from which appellant appeals. *One.* It reformed a certain deed, changing it to describe a homestead of ¼ of an acre. *Two.* It held that the signature on another deed was not a forgery. The facts leading to a presentation of these issues are set out below.

Charles T. Tetrick owned and maintained his home in Pea Ridge, Benton County, for many years before his death on December 1, 1955. Previous to 1949 he was engaged in raising chickens, financed by appellant, the Bank of Pea Ridge. In the year last mentioned the appellant secured a judgment against him for about $20,000. In May, 1950 Tetrick was adjudged a bankrupt, but was denied a discharge because, as the Referee found, of the questionable manner in which he had handled his finances with appellant. The Referee, however, found that Tetrick's homestead could not be subjected to the payment of his debt to the bank. When Tetrick died in 1955 appellant filed its claim against his estate in the amount of $18,609.61, the balance due at that time.

In order to properly understand the issues involved it is necessary to describe the property which Tetrick owned in Pea Ridge on which his home was situated. Parts of it can only be described by tedious metes and bounds measurements, but, for simplification and convenience, we describe it in this manner: Parcel (a) Lot 3 Block 1, which is in the shape of a parallelogram, 125 feet east and west and 144½ feet north and south; Parcel (b) Lot 10, Block 1, which is in the shape of a parallelogram, 40 feet east and west and 80 feet north and south, and which adjoins Lot 3 on the south at the southwest corner thereof, and; Parcel (c) which can only be described accurately by metes and bounds, but is an extension of Lot 3 on the west side for a distance of 87 feet, and also a small triangular parcel on the south side of said extension, and on the west side of Lot 10. This was all the land owned by Tetrick, and consisted of approximately an acre.

On January 1, 1951 Tetrick (his wife having previously died) executed a deed to his daughter, appellee, to Parcel (a), or Lot 3. This deed was recorded 5 days after his death. We shall refer to this deed as deed No. 1. The record also contains a deed, same date, purporting to be signed by Tetrick conveying to appellee *all* of his property, *i.e.* Parcels (a), (b), and (c). This deed, never acknowledged or recorded, will be referred to as deed No. 2.

The land comprising the homestead of Tetrick, which it is conceded here can consist of no more than ¼ of an acre, was determined by the trial court (with the assistance of a survey) to include a strip of land 54.68 feet wide of uniform width lying along the west side of Lot 3, and also a small portion of Lot 3 in the northwest corner thereof, being 25 feet wide and 119½ feet north and south. The court and the surveyor, of course, described the ¼ acre accurately by metes and bounds.

Appellant, on January 25, 1956, filed a suit against appellee to cancel deed No. 1 in order that the property might be applied to the satisfaction of his judgment

heretofore mentioned. Replying to the above appellee contended that it was the intention of her father, by deed No. 1 to convey to her his homestead, and asked to have the said deed so reformed, and also (later) pleaded the execution of deed No. 2. In turn, appellant answered that deed No. 2 was never delivered to appellee, and that the signature on the deed was forged and not the genuine signature of Tetrick, and that there was no consideration for deed No. 1. There were other pleadings and other parties, but none of them have any bearing on the two issues here raised.

*One.* We think the evidence supports the trial court's decree ordering deed No. 1 reformed to convey to appellee the homestead. In fact there is no testimony to the contrary. The genuineness of deed No. 1 is not questioned, nor does appellant contend that Tetrick's homestead was not exempt from execution for payment of its judgment. On the other hand the evidence and circumstances are convincing that Tetrick did intend to convey his homestead to appellee and that he most likely did not know how to correctly describe the homestead. Appellee testified that when her father gave her deed No. 1, he stated it was intended to convey the homestead. Appellee had lived there and had helped her father in many ways. Much of this was corroborated by her husband. The deed was drawn by Tetrick's attorneys in Harrison using the description given them. However, sometime later the attorneys wrote Tetrick a letter stating the wrong description had been used, inclosing a new metes and bounds description describing parcel (c) above and also the 25 feet by 119½ feet strip heretofore mentioned. The letter, dated April 7, 1951 and addressed to Tetrick, reads as follows: "Herewith enclosed copy of revised description of property claimed as homestead. This description consists of considerably more than one-quarter acre — in fact, about .39 of an acre, but was approved by the Referee." The only reasonable conclusions deducible from the above letter are that Tetrick had instructed his attorneys to prepare a deed conveying his homestead to appellee, that they later

recognized a mistake had been made in the description of the homestead, and that they attempted to correct it.

We do not agree with appellant's contention that there was no consideration for the conveyance, and therefore not subject to reformation. On the contrary the evidence shows that appellee had advanced money to and on behalf of her father on numerous occasions. It may be the appellee did not expect or demand repayment, but that could have been the father's motivation in the execution of the deed. Appellee's testimony is undisputed that she deposited money in the bank to her father's account when he was in financial straits, that she paid $1,000 for her mother's funeral and also paid for the tombstone, and that she advanced approximately $1,500 to help build the very home which her father attempted to deed to her.

It is our conclusion therefore that the evidence clearly supports the trial court's decree in reforming deed No. 1 so as to convey to appellee the homestead by a description which was furnished him by a surveyor, the correctness of which is not challenged.

*Two.* In view of what we have already said, it would serve no useful purpose to discuss at length the validity of deed No. 2. If it is conceded that deed No. 2 was a fraud, it would not necessitate a reversal. In our opinion, however, the evidence supports the trial court's finding that the deed was genuine. It is true that appellant's expert witness pointed out dissimilarities in the signatures on deed No. 1 (admitted to be genuine) and deed No. 2, but as noted by the trial court, dissimilarities also appeared in other genuine signatures of Tetrick. In addition, the positive and uncontradicted testimony of appellee and her husband was that her father delivered the deed to her at his home. It does not seem reasonable that he would have done so if he had not signed it.

Affirmed.